**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 95-10429
(Summary Calendar)

UNITED STATES OF AMERICA,

PLAINTIFF-APPELLEE,

VERSUS

CLARENCE A. FAIRCHILD,

DEFENDANT-APPELLANT.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

3;95-CR-002-R
October 5, 1995

Before JONES,  JOLLY,  and STEWART, Circuit Judges.

PER CURIAM:*

    Appellant Clarence A. Fairchild wrote checks drawn on a closed account, deposited them into

newly opened accounts at six banks, and then withdrew most of the funds.  He pled guilty to one

count of bank fraud and was sentenced to 10 months' imprisonment, five years' supervised release,

and was ordered to pay restitution in the amount of $52,126.28.  He appeals the method used in

determining the amount of loss for sentencing purposes, the finding that he is able to pay restitution,

and the calculation of the restitution amount.  We affirm in part, vacate in part, and remand for

    Local Rule 47.5 provides:  "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

resentencing.

## BACKGROUND

Fairchild argues that the district court, basing its sentencing on the PSR, erred in determining the amount of loss used to determine his offense level. The PSR calculated the amount of loss at approximately $72,000 based on the total amounts of the fraudulent checks Fairchild deposited into the various bank accounts. Because Fairchild was convicted of a fraud involving altered instruments, the PSR applied §2F1.1 (a) which lists a base level of 6 for this crime. The base level is then adjusted according to the amount involved as delineated in §2F1.1(b)(1). According to §2F1.1(b)(1)(G), a loss of over $70,000 requires an increase of 6 to the base offense level. Thus, the PSR calculated the total offense level to be 12.

Fairchild objected to this calculation at the sentencing hearing, arguing that because he had not withdrawn the entire amount of deposited funds, his offense was only partially completed, and that §2X1.1 should be applied to determine the proper offense level. Overruling Fairchild's objection, the district court adopted the PSR's calculations.

Fairchild further argues that the district court's acknowledgment that he did not have the ability to repay the entire amount of the loss amounted to a repudiation of the requirement that the district court consider the defendant's ability to pay when ordering restitution. He argues that he does not have the ability to comply with the court's order of full restitution because he has three dependents, a negative net worth, and negative cash flow. He contends that the district court's finding that he did not have the ability to pay a fine is inconsistent with a finding that he can pay restitution.

Finally, Fairchild argues that the amount of restitution ordered was incorrect due to an accounting error by the bank. He contends that although the district court ordered $7,768.13 in restitution to Nations Bank, the correct amount is $5,525.43.

2

DISCUSSION

Fairchild argues that the district court miscalculated his offense level because he only actually withdrew $52,126.28 of the $72,000-worth of fraudulent checks he deposited. He contends that U.S.S.G. §2X1.1 application note 4 should have been applied because it provides that in certain cases where the participant has not completed all of the intended offense, the offense level should be the greater of the intended offense minus 3 levels, or the offense level of the completed portion of the offense. Applying §2X1.1 n.4 to Fairchild's conviction gives an intended offense calculation of 12-3=9, and a completed offense level (as determined by §2F1l1(b)(1)(F)) of 11. Because 11 is the greater number, Fairchild argues that it is the correct total offense level. Based on a Criminal History Category of I, the district court's sentence of 10 months' imprisonment lies in the middle of the range provided by the sentencing table for an offense level of 11, while it was at the bottom of the range for an offense level of 12.

We review the application of the Sentencing Guidelines *de novo* and the district court's findings of fact for clear error. *United States v. Sanders*, 942 F.2d 894, 897 (5th Cir. 1991). Because the calculation of amount of loss is a factual finding, we review that determination for clear error. *United States v. Wimbish*, 980 F.2d 312, 313 (5th Cir. 1992), *cert. denied*, 113 S. Ct. 2365 (1993).

Offenses involving fraud or deceit are sentenced according to the guidelines delineated by U.S.S.C. §2F1.1 (1994). Application note 7 to § 2F1.1 makes a distinction between theft and fraud in the value of the loss. The value of the loss from theft will be the value of the property unlawfully taken, but that will not always be the case with fraud. The note also provides that "[c]onsistent with the provisions of § 2X1.1 (Attempt, Solicitation or Conspiracy), if an intended loss that the defendant was attempting to inflict [through fraudulent means] can be determined, this figure will be used if it is greater than the actual loss." The note concludes with an example of when a fraud should be treated as a theft for sentencing purposes: "if the fraud consisted of...representing that a forged check for $40,000 was genuine, the loss would be $40,000."

This court examined this provision carefully in *Wimbish*, 980 F.2d at 314-15. In *Wimbish*,

the defendant obtained checks from stolen mail, deposited forged checks with several banks, and received cash back portions of each deposit. *Id*. at 313-15. This court stated that because the defendant's actions put the victims at risk for the full face value of the checks, the defendant had effectively stolen the checks when he offered the forged documents as genuine. *Id.* Thus, this court held that the district court did not clearly err in calculating the loss as the face value of the checks deposited. *Id*. at 15.

Fairchild argues that *Wimbish* is not controlling because the §2X1.1 argument was not raised. He cites *United States v. Mancuso*, 42 F.3d 836 (4th Cir. 1994) in support of his argument that Application note 7 mandates application of the 2X1.1 calculation because he did not complete the fraud that he had attempted.

*Mancuso* involved a relatively complex fraudulent scheme wherein the defendants borrowed money from a savings and loan to provide capital for a business installing automated storage retrieval systems. *Id*. at 42 F.3d at 838. By agreement with the savings and loan, the systems' customers were to pay the savings and loan and the defendants jointly, but the defendants persuaded their customers to divert those funds to themselves solely. *Id*. at 839-42. The defendants had not diverted the entire value of their contracts, but were sentenced by the district court according to the intended loss rather than the amounts actually diverted. *Id*. at 850. The Fourth Circuit held that §2X1.1 n.9 should have been applied because the fraudulent activity was not completed -- the defendants had not diverted the entire value of the loan-- and that it was appropriate to treat the case as a smaller completed fraud within a larger uncompleted fraud. *Id*. at 850.

The case at bar more clearly ressembles *Wimbush* than *Mancuso*. Fairchild's fraud was complete when he deposited the fraudulent checks into the bank accounts. As noted by this court in *Wimbish*, the act of depositing a fraudulent check is more akin to theft than to obtaining a loan fraudulently. 980 F.2d at 315. *See also* §2F1.1 n.7 (example equating loss in forged check cases to theft, rather than fraud cases). Thus, because the defendant's actions put the banks at risk for the full face value of the deposited checks, the defendant effectively stole the full value when he intentionally

4

deposited worthless checks. Thus, the district court's finding that the amount of loss was the full amount of the checks deposited was not clearly erroneous, and the total offense level was correctly calculated.

Fairchild also argues that the district court did not properly consider his inability to pay when ordering restitution of the full amount defrauded from the banks. Restitution is authorized for violations under Title 18. 18 U.S.C. § 3556 (1990). The guidelines provide that restitution shall be ordered for Title 18 convictions. U.S.S.G. §5E1.1 (1994). In setting restitution, the district court must consider "[t]he amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. §3664(a)(1990); U.S.S.G. §5E1.1, comment (backg'd)(1994); *United States v. Plewniak*, 947 F. 2d 1284, 1289 (5th Cir. 1991), *cert. denied*, 502 U.S. 1120 (1992)(quoting 18 U.S.C. § 3664(a)(1990)).

Sentencing judges are accorded broad discretion in ordering restitution. *United States v. Ryan*, 874 F.2d 1052, 1054 (5th Cir. 1988), *cert. denied*, 489 U.S. 1019 (1989). A sentencing judge is not required to make specific findings on the factors delineated in §3664; this court need satisfy itself only that the record adequately supports the district court's order. *Plewniak*, 947 F. 2d at 1289.

Fairchild has the burden of demonstrating that he is financially unable to comply with the restitution order. 18 U.S.C. § 3664(d); *United States v. Reese*, 998 F.2d 1275, 1280-81 (5th Cir. 1993). A poor financial condition due to present unemployment is not a bar to an order of restitution. *Ryan*, 874 F.2d at 1054. Not even a negative net worth or negative cash flow will render a restitution order illegal. *See United States v. Stafford*, 896 F. 2d 83,84 (5th Cir. 1990). Thus, Fairchild's present poor financial condition, present unemployment and negative cash flow do not render the restitution order illegal. The district court's comments indicate that it considered Fairchild's ability to pay, and based on his employment and earnings history, he has not demonstrated that he would be unable to pay $150 a month for restitution when he is released from prison.

However, two aspects of the district court's order are troubling. First, the court ordered the

5

payments to begin while Fairchild is incarcerated, even though it is apparent that his wife's income alone is not sufficient to meet the family's monthly expenses. Secondly, the court delegated the authority to review Fairchild's ability to pay the $150 monthly and adjust the amount of the payments to the probation officer. Although Fairchild did not object to this delegation of authority, this court has held that the district court must designate the timing and amount of payments. See U.S.S.G. §5E1.1, comment (backg'd); *United States v. Albro*, 32 F.3d 173, 174 (5th Cir. 1994). It is plain error to delegate this authority to the probation officer. *Albro*, 32 F. 3d at 174 n.1.

Fairchild also argues that the amount of restitution ordered was incorrect due to an accounting error by the bank. He contends that although the district court ordered $7,768.13 payable to Nations Bank in restitution, the correct amount is $5,525.43.

Fairchild made this objection to the district court, but the district court overruled it without explanation. A review of the record shows that Fairchild is correct to within $34.35. The Government does not contest Fairchild's restitution calculation of $49,883.58.

Therefore, the order of restitution is VACATED and the case REMANDED for resentencing to correct the amount of restitution owed to Nations Bank. It is also remanded for resentencing for monthly payments to begin after Fairchild is released, with any adjustments to the payment schedule to be made by the district court pursuant to 18 U.S.C. §3663(g)(1990 & Supp. 1995). Otherwise, the sentence is AFFIRMED.